Filed 9/11/23  Diaz v. Hutchinson Aerospace & Industry CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| MIGUEL A. DIAZ et al., | B313075 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC600200) |
| v. | |
| HUTCHINSON AEROSPACE & INDUSTRY, INC., | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING |
| Defendant and Respondent. | [Change in Judgment] |

IT IS ORDERED that the opinion filed in the above-captioned matter on August 21, 2023, be modified as follows:

Disposition on page 22:  "The judgment is affirmed.  The parties shall bear their own costs on appeal."

There is a change in judgment.

The petition for rehearing filed by appellant on September 5, 2023, is denied.

_____

STRATTON, P. J.          WILEY, J.          VIRAMONTES, J.

Filed 8/21/23  Diaz v. Hutchinson Aerospace & Industry CA2/8 (unmodified opinion)
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| MIGUEL A. DIAZ et al., | B313075 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC600200) |
| v. | |
| HUTCHINSON AEROSPACE & INDUSTRY, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment after jury verdict.  David Sotelo, Judge.  Affirmed.

Gusdorff Law, Janet Gusdorff; Turk & Associates and Salim N. Turk for Plaintiffs and Appellants.

AlvaradoSmith, Theodore E. Bacon and William M. Hensley for Defendant and Respondent.

_____

Appellants Miguel Diaz and Jose Martinez appeal a judgment following a jury verdict in favor of respondent Hutchinson Aerospace & Industry, Inc., on claims of (1) retaliation in violation of Labor Code section 1102.5; (2) wrongful termination in violation of public policy; (3) libel and slander; (4) disability discrimination; and (5) harassment based on disability. Appellants contend that the trial court erred in instructing the jury on at-will employment because the instruction was irrelevant, duplicative, and argumentative. We conclude that the trial court did not err. We further conclude that the trial court did not abuse its discretion in its evidentiary rulings. Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Miguel Diaz raises FAA compliance concerns

Appellants Miguel Diaz and Jose Martinez worked for respondent Hutchinson Aerospace & Industry, Inc., formerly known as Barry Controls, (Hutchinson) located in Burbank, California. Hutchinson overhauls and repairs aerospace parts and sells them to airline companies. Hutchinson's aerospace manufacturing operations are regulated by the Federal Aviation Administration (FAA).

Diaz began working for Hutchinson as a technician in 2009 and elevated to Lead Technician in 2014. As part of his job duties, he oversaw the overhaul process for aerospace parts, and he supervised and trained other technicians. Diaz's direct supervisor was Edgar Mijangos.

Sometime in January 2014, Diaz began noticing what he believed to be FAA compliance issues. The FAA requires Hutchinson to have protocols to trace products through paperwork and reports that show the various steps a product

2

went through during inspection and testing. Diaz reported to Mijangos that Hutchinson was missing paperwork that created traceability concerns. He later reported repeated missing paperwork issues to Manufacturing Manager, Richard Rodriguez, and Vice President of Operations, Pierre Acker.

Diaz also complained that Hutchinson was prematurely inflating sales numbers at the end of each month. Diaz testified that his concerns were not resolved by April or May 2014, which prompted him to notify General Manager, Neil O'Hara.

Diaz testified that in or around May or June 2014, he discovered a crack in a metal component that he believed was due to Hutchinson skipping an inspection step that was required by the FAA. Diaz confronted Mijangos because Diaz believed Mijangos was responsible for skipping the required step. Diaz also later e-mailed Acker.

On or around June 6, 2014, Diaz met with the head of human resources, Marie Dhaine, Acker, and Mijangos to discuss his concerns. Acker told Diaz that it was fine to do inspection steps in a different order so long as they are all completed in the end.

Diaz testified that on or around November 10, 2014, he believed that Mijangos orchestrated falsified paperwork on some parts, including a molded assembly part. Diaz then reported his concerns to Acker and a sales representative, Greys Castanon. Castanon then notified Dhaine and the human resources.

At trial, Hutchinson's witnesses testified that Hutchinson investigated and remedied all of the violations Diaz complained about.

3

## II. Martinez requests accommodations for his workplace injury and complains about FAA violations

Appellant Jose Martinez began working for Hutchinson in 2013 assisting repair technicians in the repair station. On or around March 31, 2014, Martinez was injured during an off-site delivery. Martinez then suffered an additional injury due to the medication he took for his workplace injury. Hutchinson accommodated his medical restrictions at work for the two injuries. Martinez's doctor then authorized him to work over eight hours and Martinez asked to work overtime as an accommodation. However, Dhaine testified that overtime was something based on company needs and not as an accommodation.

Sometime in May or June 2014, Martinez complained to O'Hara and Castanon that there was paperwork missing from the repair station which could constitute a potential FAA violation. Martinez testified that he told O'Hara, Acker, and Castanon that Mijangos was responsible for the missing paperwork. O'Hara then forwarded Martinez's e-mail about the missing paperwork to Acker.

Soon after, Hutchinson disciplined Martinez for working overtime. Dhaine told Mijangos to not let Martinez work overtime in the future.

## III. Hutchinson terminates appellants for timecard fraud

On November 25, 2014, Mijangos accused both Diaz and Martinez of timecard fraud. Mijangos said he observed Diaz was not at his work station until 6:15 a.m. when his timecard showed he was clocked in at 5:48 a.m. Dhaine also observed Martinez enter the parking lot 20 to 30 minutes after he clocked in.

4

Human Resources suspended Diaz and Martinez while Hutchinson conducted an investigation, and determined that Diaz and Martinez had several discrepancies between their badge swipe and clock-in times. Mijangos also reported to Dhaine that on November 14, 2014, he noticed that Diaz was clocked in but that his car was not in the parking lot. Acker, Dhaine, and Hutchinson's Chief Executive Officer, Grant Hintze, then made the decision to terminate Diaz and Martinez.

## IV.    Relevant procedural history and events at trial

Appellants filed a lawsuit against Hutchinson for: (1) retaliation in violation of Labor Code section 1102.5; (2) wrongful termination in violation of public policy; and (3) libel and slander. Martinez also sued Hutchinson for disability discrimination and harassment.

In February 2020, the trial took place. The court instructed the jury on defendant's special instruction No. 3. Appellants' trial counsel objected to it as inappropriate and misleading because the first sentence defined at-will employment.

Over Appellants' objections, the court excluded evidence of a sexual harassment report and investigation concerning Mijangos. The report and investigation were the subject of Hutchinson's motion in limine No. 4. The motion was argued on December 9, 2019, with the trial court taking it under submission. At trial, the trial court excluded the evidence as not relevant. The trial court, however, allowed Appellants to read in portions of the sexual harassment investigation to show that Dhaine believed Appellants were trying to sabotage Mijangos.

The trial court also excluded statements by Hutchinson's Quality Manager, Mark Crawford, as hearsay. When Diaz confronted Crawford with his suspicion that paperwork for the

5

molded assemblies on engine isolators was fabricated, Diaz sought to testify that Crawford replied, "well Edgar [Mijangos] said it would be okay." Appellants also sought to introduce Crawford's response to Diaz asking Crawford how he could sign-off on the molded assemblies: "I just used a pre-existing inspection on the computer and referenced the isolator PIR's." The trial court excluded the statements as hearsay.

The trial court further excluded evidence related to Hutchinson's expert witness Rodney Doss's alleged bias as more prejudicial than probative. Appellants sought to introduce evidence that Doss was the president of an airline repair shop five years prior to the trial, and was involved in terminating employee who had raised FAA compliance issues based on allegations of timecard fraud.

After deliberating for approximately 137 minutes, the jury returned the following verdicts: As to Diaz's wrongful discharge claim—Diaz's whistleblower complaints were *not* a substantial motivating reason for Hutchinson's discharge decision by a 10-2 vote. As to Diaz's retaliation claim—Diaz's whistleblower disclosures were not a contributing factor in Hutchinson's discharge decision by a 9-3 vote. As to Diaz's libel and slander claim—Hutchinson did not use reasonable care in determining the truth or falsity of the timecard fraud statement ("Plaintiff had been suspended for alleged time card fraud") by a 12-0 vote, but the statement did not injure Diaz in his occupation by a 12-0 vote.

As to Martinez's wrongful discharge claim—his whistleblower complaints were not a substantial motivating reason for Hutchinson's discharge decision by a 11-1 vote. As to Martinez's retaliation claim—Martinez did not disclose a

6

potential whistleblower violation to a Hutchinson employee with authority to investigate by a 12-0 vote. As to Martinez's libel and slander claims—Hutchinson did not use reasonable care in determining the truth or falsity of the timecard fraud statement ("Plaintiff Martinez had been suspended for alleged time card fraud," or "Plaintiff Martinez has been terminated for timecard fraud") by a 12-0 vote, but the statement did not injure Diaz in his occupation by a 12-0 vote. As to Martinez's disability discrimination claim—Martinez's disability was not a substantial motivating reason for Hutchinson's termination decision by a 12-0 vote. As to Martinez's disability harassment claim—Martinez was not subject to unwanted harassing conduct by Hutchinson based on his disability by a 12-0 vote.

On January 25, 2021, the court entered judgment against Appellants. Appellants then timely appealed.

## DISCUSSION

## I. The trial court did not err in instructing the jury on defendant's special instruction No. 3

Over Appellants' objection, the trial court gave defendant's special instruction No. 3. Appellants contend that the first sentence defining California Labor Code section 2922 (at-will employment) was error because it was irrelevant, duplicative, and argumentative. We conclude that there was no error and therefore do not address prejudice.

The court instructed the jury: "California Labor Code Section 2922 states, 'an employment, having no specified term, may be terminated at the will of either party on no notice to the other. If plaintiffs prove that their disclosure of information of an unlawful act was a contributing factor to their discharge, Hutchinson is not liable if it proves by clear and convincing

7

evidence that it would have discharged plaintiffs anyway at the time for legitimate and independent reasons.' "

### A.    Applicable law
#### a.    Labor Code section 1102.5

California Labor Code section 1102.5, subdivision (b), California's whistleblower statute, provides:

"An employer . . . shall not retaliate against an employee for disclosing information . . . to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties." (*Ibid*.)

The California Supreme Court recently clarified that claims brought under section 1102.5 follow a two-step burden-shifting process.  (*See Lawson v. PPG Architectural Finishes, Inc.* (2022) 12 Cal. 5th 703, 718.)  First, plaintiff must establish, by a preponderance of the evidence, that retaliation for an employee's protected activities was a contributing factor in a contested employment action.  (*Ibid*.)  Second, and only if a plaintiff has made the required showing, the burden shifts to the employer to demonstrate, by clear and convincing evidence, that it would have taken the action in question for legitimate, independent reasons even had the plaintiff not engaged in protected activity. (*Ibid*.)

### b. Wrongful termination in violation of FEHA and public policy

An employer who hires an employee "at will" may discharge that employee for any reason *except* for "performing an act that public policy would encourage, or for refusing to do something that public policy would condemn." (*Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1090 (*Gantt*), overruled on other grounds; *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66 (*Green*); *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 172; Lab. Code, § 2922 [defining at-will employment].) To avoid "judicial policymaking," however, this limitation on discharging employees in violation of public policy is confined to public policies that (1) are codified and "tethered" to a constitutional or statutory provision; (2) "inure[] to the benefit of the public"; (3) are "fundamental" and "substantial"; and (4) are "well-established." (*Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 889–890; *Gantt*, at p. 1095; *Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1256.)

In this case, Appellants' claims for wrongful termination rest on the public policy condemning retaliation against an employee for reporting conduct that he "has reasonable cause to believe" constitutes "a violation of state or federal" law (Lab. Code, § 1102.5, subd. (b)), namely FAA violations. The public policy against retaliating against whistleblowers is sufficiently "fundamental" to support a claim for wrongful termination. (See, e.g., *Green*, *supra*, 19 Cal.4th at pp. 76–77 [so holding].)

Additionally, Martinez premises his wrongful termination claim on his disability discrimination claim. California's Fair Employment and Housing Act (FEHA) makes it an unlawful employment practice to discharge or discriminate against

9

employees in the "terms, conditions, or privileges of employment" because of a physical or mental disability or medical condition. (Gov. Code, § 12940, subd. (a).) "The FEHA's provisions may provide the policy basis for a claim for wrongful termination in violation of public policy." (*Zamora v. Security Industry Specialists, Inc.* (2021) 71 Cal.App.5th 1, 31.)

For wrongful termination claims, when a plaintiff has shown by a preponderance of the evidence that discrimination or retaliation was a substantial factor motivating his or her termination, the employer is entitled to demonstrate that legitimate, nondiscriminatory or nonretaliatory reasons would have led it to make the same decision at the time. (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 214–215.) "If the employer proves by a preponderance of the evidence that it would have made the same decision for lawful reasons, then the plaintiff cannot be awarded damages, backpay, or an order of reinstatement." (*Id.* at p. 241.)

### c. Jury instructions and standard of review

"Upon request, a party in a civil case is entitled to correct, nonargumentative jury instructions on every theory of the case that is supported by substantial evidence. [Citations.] The trial court has no duty to instruct on its own motion, nor is it obligated to modify proposed instructions to make them complete or correct." (*Maureen K. v. Tuschka* (2013) 215 Cal.App.4th 519, 526.) " ' " ' "A reviewing court must review the evidence [in the light] most favorable to the contention that the requested instruction is applicable since the parties are entitled to an instruction thereon if the evidence so viewed could establish the elements of the theory presented." ' " ' " (*DeWitt v. Monterey Ins. Co.* (2012) 204 Cal.App.4th 233, 240.)

We determine whether a jury instruction is a correct statement of law under the independent or de novo standard of review.  (*People v. Posey* (2004) 32 Cal.4th 193, 218.)  " 'Review of the adequacy of instructions is based on whether the trial court "fully and fairly instructed on the applicable law." ' " (*People v. Turner* (2019) 37 Cal.App.5th 882, 887.)

It is error to give an instruction that is a correct statement of law in the abstract but " ' "is not within the issues developed by the evidence or reasonable inferences therefrom.  And if it is likely to mislead the jury the error is prejudicial." ' " (*Veronese v. Lucasfilm Ltd.* (2012) 212 Cal.App.4th 1, 25; *DeGeorge v. Crimmins* (1967) 254 Cal.App.2d 544, 547.)

## B.    The court did not err in instructing the jury on special instruction No. 3

The Labor Code section 2922 legal statement in special instruction No. 3 was both a correct statement of law and relevant because it was within the issues developed by the evidence.  The instruction stated the baseline status of Appellants' employment and was couched within the shifting burden standard for Labor Code section 1102.5 whistleblower retaliation.  Hutchinson's theory was that Appellants were fired for nonillegal reasons:  namely timecard fraud.  "[T]he starting point for all employment cases is the presumption of at-will employment.  [Labor Code section] 2922 provides that '[a]n employment, having no specified term, may be terminated at the will of either party on notice to the other.'  The tort of wrongful termination in violation of public policy is an exception to the statute." (*Cabesuela v. Browning-Ferris Industries of California, Inc.* (1998) 68 Cal.App.4th 101, 107.)  It was undisputed that Appellants were at-will employees and that Hutchinson

11

terminated their employment.  Hutchinson presented evidence that Appellants were terminated for timecard fraud rather than their complaints concerning FAA violations or for Martinez's disability.  As the trial court stated in response to Appellants' trial counsel, the first sentence stated the "baseline for employment" and indicated that "labor can be terminated legally and properly at any time unless there is a specified term.  But it may not be when you have claims such as the ones that you have here."  Notably, the trial court did not give a standalone Labor Code section 2922 instruction and contextualized it within the code's section 1102.5 claim.  Hutchinson's evidence and trial theory directly raised the question of legal versus illegal grounds for terminating at-will employment, and the instruction was therefore relevant and a correct statement of the law.

Special instruction No. 3 was also not argumentative or duplicative.  The instruction did not "[go] too elaborately into the particular facts relied on by [Hutchinson]."  (*Morgan v. J-M Manufacturing Company, Inc.* (2021) 60 Cal.App.5th 1078, 1088.)  Rather, it "[stated the] rules of law generally, rather than elaborate matters of evidence."  (*Ibid.*)  Moreover, the first sentence defining Labor Code section 2922 was not duplicative of the proceeding sentences about the shifting burden standard and Hutchinson's affirmative defense.  As discussed above, the first sentence merely set forth the baseline for employment.  The jury instruction was therefore proper.

Appellants cite no cases where it was error to instruct on at-will employment under similar facts and claims.  Appellants primarily rely on *Rosenfeld v. Abraham Joshua Heschel Day School, Inc.* (2014) 226 Cal.App.4th 886.  But that case did not deal with instructional error and only held that the trial court did

12

not err in admitting plaintiff's employment contract to determine the terms of her tenured status.  (*Id*. at pp. 897–899.)  Appellants' remaining authorities are either nonbinding or cite to general propositions of law on at-will employment or instructional error.  As such, Appellants' claims of instructional error are unpersuasive.

Accordingly, the trial court did not err in providing the jury with special instruction No. 3.

## II.     The trial court did not err in its evidentiary rulings

Appellants also challenge several of the trial court's rulings on the admission or exclusion of evidence.  As discussed below, we find that the trial court did not abuse its discretion in its evidentiary rulings.

### A.     Standard of review

"Broadly speaking, an appellate court reviews any ruling by a trial court as to the admissibility of evidence for abuse of discretion."  (*People v. Alvarez* (1996) 14 Cal.4th 155, 201.)  The trial court's "discretion is only abused where there is a clear showing [it] exceeded the bounds of reason, all of the circumstances being considered."  (*People v. DeJesus* (1995) 38 Cal.App.4th 1, 32.)  We may affirm the trial court's evidentiary ruling if it "was correct on any ground."  (*People v. Geier* (2007) 41 Cal.4th 555, 582 (*Geier*), overruled on other grounds as stated in *People v. Houston* (2012) 54 Cal.4th 1186, 1220.)

**B.    The trial court's exclusion of evidence related to Hutchinson's investigation of sexual harassment allegations against Mijangos was not an abuse of discretion**

Appellants argue that the trial court erred in excluding evidence of a sexual harassment investigation concerning Mijangos, because it would have shown that Hutchinson handled the investigation and discipline of Mijangos more favorably. Appellants also argue that evidence related to the sexual harassment investigation would show Mijangos's retaliatory intent and motive to fabricate timecard fraud allegations. We conclude that the trial court did not err in excluding this evidence.

Appellants fail to establish that the sexual harassment investigation would be admissible as comparator evidence. "To be probative, comparative data must be directed at showing disparate treatment between employees who are similarly situated to the plaintiff in all relevant respects." (*Gupta v. Trustees of California State University* (2019) 40 Cal.App.5th 510, 519–520.) "In general, 'individuals are similarly situated when they have similar jobs and display similar conduct.'" (*Id*. at p. 520.)

Here, Mijangos was not similarly situated to Diaz and Martinez. Hutchinson investigated Mijangos for sexual harassment allegations, while it investigated Diaz and Martinez for timecard fraud. (*Guz v. Bechtel Nat. Inc.* (2000) 24 Cal.4th 317, 369 [plaintiff in discrimination case failed to show pretext through statistical data on employees that were not "similar or comparable"].) Further, Diaz was the lead technician in Hutchinson's repair station, and Martinez was an assistant to

14

repair technicians in Hutchinson's parts department. Mijangos was an accountable manager in Hutchinson's repair station.

Appellants fail to cite to any authority that supports their contention for finding comparator evidence under such dissimilar conduct, as well as dissimilar positions. The evidence related to sexual harassment investigation is therefore not admissible as probative comparator evidence.

Nor is the sexual harassment evidence admissible to prove Mijangos's motive, intent, preparation, plan, or knowledge under Evidence Code section 1101, subd. (b). Appellants rely on *Pantoja v. Anton* (2011) 198 Cal.App.4th 87 for the proposition that the evidence showing Mijangos believed Diaz was behind the sexual harassment allegations is probative of Mijangos fabricating timecard fraud allegations in retaliation. In *Pantoja,* the court held the jury should have been allowed to hear "me too" evidence concerning harassing activity against female employees other than the plaintiff. (*Id*. at p. 92.) "The 'me-too' doctrine, however, does not permit a plaintiff to present evidence of discrimination against employees outside of the plaintiff's protected class to show discrimination or harassment against the plaintiff." (*Pinter-Brown v. Regents of University of California* (2020) 48 Cal.App.5th 55, 96.) Here, Appellants are improperly attempting to present evidence of Mijangos's alleged harassment based on sex to show discrimination and harassment against them based on their whistleblowing activities. As such, the evidence is not probative of Mijangos's retaliatory intent and motive.

Evidence Code section 352 allows the trial court to exclude otherwise relevant evidence "if its probative value is substantially outweighed by the probability that its admission

15

will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." "A trial court's discretionary ruling under this statute ' "must not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*People v. Williams* (2008) 43 Cal.4th 584, 634–635.) Appellants contend that the trial court abused its discretion by not engaging in an Evidence Code section 352 analysis because it stated that the evidence was not relevant and therefore did not determine whether its probative value was outweighed by its prejudicial effect.

Even if "the trial court did not expressly base its ruling on Evidence Code section 352, we review the ruling, not the court's reasoning and, if the ruling was correct on any ground, we affirm." (*Geier, supra,* 41 Cal.4th at p. 582). As discussed above, the evidence related to the sexual harassment investigation had minimal probative value given that it did not constitute comparator evidence or evidence of motive or intent. Further, the trial court allowed Appellants to read in portions of the report that would be probative of Mijangos's retaliatory intent:

"Q. And Ms. Dhaine, after the June 6th meeting with Mr. Diaz, Mr. Martinez, and the rest of management, you prepared words that state, 'As a side note, we've had issues in the past few weeks with Miguel Diaz and another employee who are trying to sabotage Edgar's (Mijangos's) authority. Both the VP of Operations and I are aware of the situation and are managing it with these—Miguel Diaz and the other employee.'

"Those are your words?

"A. That is part of the report I wrote, yes."

16

Admission of the entire sexual harassment investigation would "necessitate an undue consumption of time and risk confusing the issues." (*Meeks v. Autozone, Inc.* (2018) 24 Cal.App.5th 855, 867.) Introduction of such evidence "would have led to a trial within a trial" of the sexual harassment allegations against Mijangos. (*Id.* at p. 868.) Further, the sexual harassment allegations are "of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant." (*People v. Doolin* (2009) 45 Cal.4th 390, 439.) Accordingly, we find no error in the trial court's ruling excluding any evidence of sexual harassment allegations against Mijangos.

## C. The trial court's exclusion of the Crawford statement was not an abuse of discretion

Appellants argue that Crawford's statements were not hearsay because they qualified as operative facts and prove Crawford's knowledge. They further argue that even if the statements were hearsay, they would fall under the state of mind and corporate admission exceptions to the hearsay rule. We reject these contentions and conclude that the trial court did not abuse its discretion.

Diaz sought to testify about a conversation that he had with Crawford when Diaz told Crawford that he thought his paperwork for the molded assemblies on engine isolators was being fabricated. Crawford responded, "well Edgar [Mijangos] said it would be o.k." Appellants also sought to introduce Crawford's response to Diaz asking Crawford how he could sign-off on the molded assemblies: "I just used a pre-existing inspection on the computer and referenced the isolator PIR's." The trial court excluded the statements as hearsay.

17

" 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) It is generally inadmissible unless an exception to the rule applies. (*Id.*, subd. (b)).

When evidence contains multiple levels of out-of-court statements, each level must be analyzed separately to determine whether it is hearsay or nonhearsay, and if hearsay, whether each level falls within a hearsay exception. (Evid. Code, § 1201.)

Under the operative facts doctrine, "[i]f a fact in controversy is whether certain words were spoken or written and not whether the words were true, evidence that these words were spoken or written is admissible as nonhearsay evidence." (*People v. Fields* (1998) 61 Cal.App.4th 1063, 1068.) For example, contractual words, such as acceptance of an offer, will make a binding contract even if the speaker had no intention to be bound. (See *State of Oregon v. Superior Court* (1994) 24 Cal.App.4th 1550, 1555, fn.1, disapproved on other grounds in *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 465, fn. 8.)

Appellants argue that the statements are operative facts to prove their theory that Mijangos directed Crawford to falsify paperwork and then concocted timecard fraud accusation in retaliation after he was caught. But that reason goes directly to the truth of the matter asserted in Crawford's statement: whether Mijangos said it was permissible to falsify paperwork to prove that Mijangos was directing employees to fabricate documents. As such, the statements do not qualify as operative facts.

We further reject Appellants' contention that Crawford's statements were admissible pursuant to Evidence Code section 1250 as evidence of the state of mind of Mijangos to show that he had a "lackadaisical attitude towards traceability requirements and intent to neglect policy and procedure" as well as "explains his act of accusing [Appellants] of timecard fraud." "[T]hat exception applies only to statements offered to show the state of mind of the *declarant*." (*People v. Luo* (2017) 16 Cal.App.5th 673, 677; accord, Evid. Code, § 1250, subd. (a)(1).) Here, Crawford was the declarant as to what Mijangos said to him, and Diaz attempted to testify as to what Mijangos said to Crawford. This was impermissible double hearsay because as discussed above, it was offered to prove that Mijangos was committing FAA violations. Thus, Appellants are incorrect that Crawford's statements are admissible to show Mijangos's state of mind.

Appellants also claim that the statements are relevant to establish Crawford's knowledge without any further explanation. Even assuming Appellants are attempting to establish that Crawford had knowledge about alleged FAA violations at Hutchinson, the jury already found that Appellants had a reasonable belief that there were FAA violations at Hutchinson. Appellants have the burden of proving the trial court abused its discretion. In carrying this burden, Appellants must support each assertion with argument, legal authority, and citations to the record. (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1207; *City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287; *Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1408.) We may and do "disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to

19

adopt." (*City of Santa Maria v. Adam*, at p. 287.)  We thus reject Appellants' assertion that Crawford's statements are admissible to prove his knowledge.

Finally, the statements do not qualify as authorized corporate admissions.  " 'Evidence of a statement offered against a party is not made inadmissible by the hearsay rule if: [¶] (a) The statement was made by a person authorized by the party to make a statement or statements for him concerning the subject matter of the statement; and [¶] (b) The evidence is offered either after admission of evidence sufficient to sustain a finding of such authority or, in the court's discretion as to the order of proof, subject to the admission of such evidence.' " (*O'Neill v. Novartis Consumer Health, Inc.* (2007) 147 Cal.App.4th 1388, 1403 (*O'Neill*).)  Job title alone is insufficient to show authority to speak on behalf of a company.  (*Ibid.* [affirming trial court's exclusion of meeting minutes signed by defendant's director of regulatory affairs based on lack of evidence that he had authority to speak].)  "The determination generally 'requires an examination of the nature of the employee's usual and customary authority, the nature of the statement in relation to that authority, and the particular relevance or purpose of the statement.' " (*Ibid.*)

Appellants presented no evidence of Crawford's authority to make a statement on behalf of the company other than his title as quality manager.  Appellants do not cite to any trial testimony to establish Crawford's authority and only cite to their trial brief.  "Although place in an employer's hierarchy is important in determining authority to speak, [Crawford's] title, without more, is not sufficient to show he had authority to make admissions on behalf of a company." (*O'Neill, supra,* 147 Cal.App.4th at

20

p. 1403.) "In the absence of the necessary foundation for an authorized admission, the court properly excluded this evidence." (*Ibid*.) Accordingly, the trial court did not abuse its discretion in excluding Crawford's statements.

### D. The trial court's exclusion of evidence related to Hutchinson's expert witness's alleged bias was not an abuse of discretion

Appellants argue that the trial court erred in excluding evidence of Hutchinson's expert witness Robert Doss's alleged bias because Doss was the president of an airline repair shop five years prior to the trial, and was involved in terminating employee who had raised FAA compliance issues based on allegations of timecard fraud. We conclude that the trial court did not err in excluding testimony related to this event as more prejudicial than probative.

As discussed above, Evidence Code section 352 grants a trial judge discretion to exclude evidence if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time, or create a substantial danger of undue prejudice, confusion of the issues, or misleading the jury. (*Ibid*.) Appellants do not dispute that Doss only testified as to FAA compliance issues at Hutchinson and not whether the timecard fraud allegations against Appellants had any merit. On appeal, Appellants fail to show how Doss's testimony is relevant when the jury found that Appellants had a reasonable belief there were FAA violations at Hutchinson. As such, the jury did not agree with Doss's testimony and believed Appellants on this issue. Further, admitting evidence related to Doss's alleged bias would have resulted in a "trial within a trial" about the termination incident Doss was involved with five years

21

ago.  (See *People v. Hamilton* (2009) 45 Cal.4th 863, 930 [evidence with limited probative value properly excluded where presentation would result in time-consuming "mini-trial"].)  Accordingly, the trial court was not "arbitrary, capricious or patently absurd" in excluding this evidence on the basis that it would have unduly consumed time and confused the jury.  (*People v. Williams, supra,* 43 Cal.4th at p. 634.)

## DISPOSITION

The judgment is affirmed.  Hutchinson is awarded costs on appeal.


VIRAMONTES, J.

We concur:


STRATTON, P. J.


WILEY, J.

22